**Application of Deborah JOHNSON et al.**

**No. 72-1344.**

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1973.

Decided Aug. 3, 1973.

As Amended Aug. 22, 1973.

Jonathan M. Hyman, Chicago, Ill., David Scribner, New York City, William J. Bender, Arthur Kinoy, Newark, N. J., for appellants.

John C. Hoyle, Atty., U. S. Dept. of Justice, Washington, D. C., James R. Thompson, U. S. Atty., William T. Huyck, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before HASTINGS, BARNES,* and SPRECHER, Circuit Judges.

* The Honorable Stanley N. Barnes, Senior Judge of the Ninth Circuit, sitting by designation.

BARNES, Circuit Judge.

This is an appeal from a decision of the District Court (1) declining to issue an order (a) annulling, and (b) directing the Clerk of the District Court to expunge, from the Records of the District Court, a report made on May 15, 1970, by the January Grand Jury of the District Court for the Northern District of Illinois, Eastern Division; and (2) dismissing, on motion of the Government, the said application for such annulment and expunction.

The order made on February 24, 1972 is concise and reads as follows:

"ENTER ORDER: Granting the Government's motion to dismiss this application to expunge a grand jury report.

"The report in question was issued by the January 1970 Grand Jury upon authorization by this court on May 15, 1970. Pursuant to this court's order, copies of the report were distributed to designated public officials, the news media, and the general public at a nominal cost.

"Fifteen months after the grand jury report had been widely distributed, these three applicants moved to expunge that report on the grounds that the grand jury exceeded its lawful authority and violated Rule 6(e), Federal Rules of Criminal Procedure, by issuing the report and, further, that these applicants were prejudiced by certain statements contained in the report itself.

"The secrecy of grand jury proceedings is not absolute; authorization of disclosure by means of grand jury reports or otherwise is committed to the discretion of the court. In re Grand Jury January, 1969, 315 F.Supp. 662 (D. Md.1970), and cases cited therein. Here, the court specifically found that disclosure of the grand Jury's findings was in the public interest. The court therefore concludes that issuance of the grand jury report was lawful.

"Furthermore, the contention that these applicants are prejudiced by the continued existence of the report also lacks merit. The report does not accuse them of any criminal conduct, nor are they under indictment in this court or any other court for activities related to the matters discussed in the grand jury report. Their reliance on Hammond v. Brown,[*] 323 F.Supp. 326 (N.D.Ohio 1971), aff'd 450 F.2d 480 (6th Cir., No. 71–1278, October 22, 1971) is therefore misplaced.

"Under all of these circumstances, this court is of the opinion that the application lacks merit and should be dismissed."

Appellants assert as grounds for their application:

(a) the Grand Jury had no authority to issue the Report;

(b) the Report and its disclosure violate the rule of secrecy of grand jury proceedings;

(c) the recommendations as to conduct of executive agencies violate the doctrine of separation of powers;

(d) the recommendations as to conduct and function of news media, and the conduct of lawyers in criminal cases, are beyond the jury's lawful authority and jurisdiction;

(e) the submission of the grand jury conclusions and recommendations to "public exposure" is beyond the authority and jurisdiction of the grand jury;

(f) that the charge and findings that the failure and refusal of certain named persons to testify before the grand jury are contrary to law and the scope of the jury's authority and jurisdiction;

(g) the repetition of newspaper reports on the purported conduct of Black Panther leaders, members and adherents, including plaintiffs, was beyond the scope of the grand jury's power;

(h) the report evidences bias against the Black Panther party, its members and adherents, including plaintiffs;

---

[*] The correct appellate citation for Hammond v. Brown, *supra*, is "450 F.2d 480 (6th Cir. 1971)."

(i) the report "acted as a public Grand Censor" of the views and conduct of the community, the Black Panther Party, its members and adherents, including the "victims of the police raid of December 4, 1969, and those of the news media";

(j) applicants were accused of conduct constituting a crime.

The United States, appearing in opposition to the motion, urges there are but two questions involved:

1. Whether the order of the district court dismissing the application to expunge is an appealable order; and

2. If so, whether the district court erred in dismissing an application to expunge from the record a grand jury report published and distributed pursuant to an order of the district court where the application was made fifteen months after the publication of the report and the applicants are not accused in the report of any illegal activity.

We need to state here further background. The notice of appeal herein was timely filed on March 23, 1972. On April 3, 1972, appellants filed a petition for a Writ of Mandamus entitled Deborah Johnson, et al. v. Chief Judge Robson, in the district court of the Northern District of Illinois No. 71 C 1908, stating they believed a Writ of Mandamus rather than an appeal to be the correct procedure to follow. (Pet. at 7). This Court denied the petition for a Writ of Mandamus to require the District Court to expunge in a short order.[1]

■ We agree that relief through a Petition for Mandamus is the proper procedure with which to have the Court of Appeals require a district court to consider the application.[2]

■ The United States Court of Appeals is a statutory court and its jurisdiction is created and established by statute alone. 28 U.S.C. §§ 1291 and 1292 are the statutes, covering certain final opinions and certain interlocutory orders, enabling the taking of appeals. We also have jurisdiction by use of prerogative writs, authorized by 28 U.S.C. § 1651—the "All Writs" statute. "Review by prerogative writ is extraordinary and rare." Moore, Federal Practice, § 110.01. We have no other jurisdiction than that thus given by statute.[3]

■ There being no criminal case pending against petitioners in the district court, the order of the district court was unrelated to the merits of a criminal trial, "and thus cannot be raised on appeal." Chase v. Robson, 435 F.2d 1059, 1062 (7th Cir. 1970).

Because, however, such unusual motions as that made below are "final" in the sense that they are not interlocutory with relation to any pending matter, and are final as far as any relief to petitioners is concerned, the courts have at times seen fit to rely on the so-called "supervisory mandamus" power first

---

1. "This matter comes before the Court on the petition of Deborah Johnson, Brenda Harris and Ronald Satchel, by their attorneys, for a writ of mandamus directed to Honorable Edwin A. Robson, Chief Judge of the United States District Court for the Northern District of Illinois, Eastern Division, to require him to annul the Report of the January 1970 Grand Jury, have the Clerk expunge the Report from the records of the Court, and reverse his order of May 15, 1970 authorizing publication of the Report. On consideration whereof,
   IT IS ORDERED AND ADJUDGED by this Court that the said petition for writ of mandamus be and the same is hereby DENIED."

This panel is informed by the Clerk of this Court that no record was ordered for use in connection with any proposed petition for Writ of Certiorari in the Supreme Court.

2. "The petitioner has sought to bring the matter here by appeal. *Since it clearly is an unappealable order,* we have treated the notice of appeal as a petition for a writ of mandamus . . . ." (Emphasis added.) Petition of A. & H. Transportation, Inc., 319 F.2d 69, 70 (4th Cir. 1963), cert. denied, 375 U.S. 924, 84 S.Ct. 266, 11 L.Ed.2d 166 (1963).

3. Moore's Federal Practice, §§ 110.02, 110.28, and cases cited therein.

enunciated in and recognized by the Supreme Court in LaBuy v. Howes Leather Co., 352 U.S. 249, 259–260, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). *Cf.* Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L. Ed.2d 152 (1964).

While an ordinary writ of mandamus will only issue to require a district judge to act, this "supervisory jurisdiction" is said to arise under the all-writs statute, "to correct error or abuses of discretion on the part of district judges in dealing with grand jury investigations." United States v. United States District Court, 238 F.2d 713, 719 (4th Cir. 1965), cert. denied, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957).

■ But appellate courts are advised to be cautious in their approach to claimed rights under the all-writs statute, and "to confine an inferior court to a lawful exercise of its prescribed jurisdiction, or to compel it to exercise its authority when it is its duty to do so." Roche v. Evaporated Milk Ass'n, 319 U. S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). Obviously, the district court here had not refused to act; it acted when it denied the motion to quash, and dismissed the petition. Thus, the sole issue before this Court on the earlier mandamus petition was whether the exercise of the district court's jurisdiction was lawful, and not an abuse of discretion.

■ That mandamus was the proper procedure to obtain a review of the refusal of the district court to annul and expunge does not mean that the refusal by this Court to grant relief was error. Such a type of review is "extraordinary" and "reserved for exceptional cases." Ex Parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947).

This is particularly true when the appellate courts are asked to consider the manner in which the district courts supervise grand juries. In re Texas Co., 91 U.S.App.D.C. 272, 201 F.2d 177 (1952), cert. denied, 344 U.S. 904, 73 S. Ct. 283, 97 L.Ed. 698 (1952); Pet. of A. & H. Transportation Co., 319 F.2d 69, 70 (4th Cir. 1963), cert. denied, 375 U.S. 924, 84 S.Ct. 266, 11 L.Ed.2d 166 (1963); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Chase v. Robson, *supra.*

We hold this appeal presently before us is taken from an unappealable order, which can only be reached by a petition for mandamus. That remedy has been tried, and failed.

We recognize that other Circuit Courts have exercised jurisdiction over actions of district courts with respect to grand jury reports, either after the report had been ordered filed as a public record, or had been ordered published. An example of the former is a recent case in the Fifth Circuit, decided June 4, 1973, entitled: In re Report of Grand Jury Proceedings filed on June 15, 1972, Honorable Jerry Woodward, et al., Appellants. 479 F.2d 458. In that opinion, no reference was made to the jurisdiction of the appellate court to consider the district court's order. Neither does it appear from the opinion whether it had to do with a "special" grand jury, which was specifically authorized by Congress in 1970 (18 U.S.C. § 3333) .to make reports. We know it was not in this case, however, because the May 15, 1970 Order of Publication, made by Judge Robson in this case, was made prior to the Congressional enactment of 18 U.S.C. § 3331 et seq. (October 15, 1970—Public Law 91–452), which authorized "special" grand juries.

In the above-mentioned *Woodward* matter, the appellant raised the same issue as was raised first here by appellant —that a "grand jury can only lawfully indict or return a no true bill and that it is powerless to speak publicly of any other matter." Because of the decision of the Fifth Circuit Court to expunge certain passages objected to by State Judge Woodward, the panel decided to "pretermit the issue of whether a feder-

al grand jury has the authority to make reports." It then added:

> "We point out, however, that there is persuasive authority and considerable historical data to support a holding that federal grand juries have authority to issue reports which do not indict for crime, in addition to their authority to indict and to return a no true bill."

citing voluminous authority in its note 2. 479 F.2d 458, at 460 decided June 4, 1973.[4]

The court ordered expunction of portions because they were found to "bear little relevance to federal subject matter," or federal concern, or purpose.

The order here appealed from is not a "collateral order"—an off-shoot from the principal litigation in which it is issued. Thus, Cohen v. Beneficial Industrial Loan Co. (1949), 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 is not applicable. Wright, Fed.Cts., 2d Ed., Ch. 11, § 101.

■ Nor can we hold that the present "appeal" could be considered by us as a petition for a common law writ of certiorari,[5] and that 28 U.S.C. § 1651 "affords ample authority for using the writ as an auxiliary process and whenever there is imperative necessity therefor, as a means of correcting excesses of jurisdiction, of giving full force and effect to existing appellate authority, and of furthering justice in other kindred ways." We would be required to find some such "excesses of jurisdiction" or denial of justice in the actions of Judge Robson. His action has already been rendered *res adjudicata* by our denial of the Writ of Mandamus filed by the same petitioners. Writs filed under § 1651 cannot be used "to actually control the decision of the trial court." Bankers Life & Cas. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953); Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); Parr v. United States, 351 U.S. 513, 520, 76 S. Ct. 912, 100 L.Ed. 1377 (1956).

A reading of Rule 6 of the Federal Rules of Criminal Procedure merely emphasizes the large legal discretion granted to and resting in the district judge with respect to grand juries,[6] and the disclosure of testimony given before it.

Two further practical matters deserve comment.

■ *First*, the report sought to be expunged was filed by the jury on May 15, 1970, and the release, publication and distribution of the report was authorized the same day by Judge Robson, not by the jury. The Application to Expunge was filed August 3, 1971, nearly fifteen months later. Meanwhile, as the district court's order of dismissal states, "copies of the report (printed at the Government Printing Office at Washington, D.C., and sold the public for 50 cents) were distributed to designated public officials, the news media, and the general public." As the appellants

---

4. We note that in one of the cases cited in Note 2 in the *Woodward* opinion (the concurring opinion of Judge Wisdom in United States v. Cox, 342 F.2d 167 (5th Cir. 1965), cert. denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965)), the following language is used:
   "The decision of the majority does not affect the inquisitorial power of the grand jury. No one questions the jury's plenary power to inquire, to summon and interrogate witnesses, and *to present either findings and a report* or an accusation in open court by presentment." (Emphasis added), 342 F.2d at 189.
   And see, generally, *Note*: "The Grand Jury as an Investigatory Body," 74 Harv. L.Rev. 590 et seq. (1961).

5. Moore's Federal Practice, § 110.26.

6. A district judge is authorized to convene a grand jury when he thinks best, (Rule 6(a)) and discharge it when he thinks proper—within the eighteen months limitation (Rule 6(g)). He determines its size (Rule 6(a)). He appoints a Foreman and a Deputy Foreman (Rule 6(c)). *He can direct disclosure (Rule 6(e)) of testimony contrary to the usual policy of secrecy of grand jury proceedings, once the good cause, as used in Rule 34, has been demonstrated.*

themselves assert, many newspapers, and radio and television stations, both in Chicago and throughout the country, published, paraphrased, referred to, commented upon, analysed and reviewed the report.

In the 35 months from the publication to the argument on appeal any harm that was done to appellants (if we assume some exists) is an accomplished fact. As was said by Judge Nordbye, a distinguished and experienced judge, when he declined to expunge a grand jury report:

> "Any harm that may have resulted from [the] publicity has already taken place, . . . Rather, the result of (expunction) might be that further publicity would flow from such a ruling."

United States v. Connelly, 129 F.Supp. 786, 787–788 (D. Minn. 1955).

Thus, "no equitable remedy whereby to forestall the *fait accompli*" can be devised. Randolph v. Willis, 220 F.Supp. 355, 359 (S.D. Cal. 1963).

*Second*, appellants rely heavily on In Application of United Electrical, Radio and Machine Workers of America, 111 F.Supp. 858 (S.D. N.Y. 1953),[7] (wherein applicants were charged with illegal activity) and their names "deliberately leaked" to the press; and Hammond v. Brown, 323 F.Supp. 326 (N.D. Ohio 1971), aff'd, 450 F.2d 480 (6th Cir. 1971) (wherein 30 indictments were also returned, and those indicted were about to stand trial). Here in the record before us, no illegal activity was charged against the appellants; none were indicted; nor are they facing trial.

Appellants generally allege in their briefs they were charged with illegal possession of weapons, were engaged in deliberate obstruction of justice by refusing to testify, and were accused of being violence-prone revolutionaries. The government brief denies specifically that any of said charges against appellants appeared in the report. Thus, 19 unregistered guns were found on the raided premises, and catalogued, possession of which was a violation of law— but no reference is made as to who possessed these weapons. (Report, at 106).

Again, the report refers to a possible obstruction of justice when the appellants refused to testify, by the actions of one Bobby Rush, not by appellants. (Report, at 102–105). Finally, the report characterizes the members of the Black Panther party as "violence-prone" —not the plaintiffs by name. (Report, at 126).[8]

Thus, the distinction between the facts of 'this case and the cases principally relied upon by appellants is clear. The usual reasons urged to protect those individually charged with crimes, or about to be charged with crimes, does not here exist.

We are satisfied that, should the dismissal by the lower court be an appealable order, and not *res judicata*, by reason of our previous order, we should *affirm*, which we do.

We affirm the action of the District Court in dismissing the application upon all grounds mentioned in the District Court's order, namely: 1. laches of the plaintiffs; 2. that the grand jury had the authority to make the report; 3. that before the disclosure, the district court properly found that such disclosure was in the public's best interest; 4. that no prejudice results to any applicant by the existence of the report; and 5. that the motion to expunge cannot be accomplished as a fact, and the seeking of such relief for expunction is moot.

---

7. Compare *United Elec. Workers*, cited, with, "In the Matter of Camden County Grand Jury," 10 N.J. 23, 66, 89, 89 A.2d 416, 444 (1952).

8. In this connection we note that the Report here involved, is described by the authors of Modern Crim. Proc., 3rd Ed., 1972 Supp. at p. 194 as:
   "A lengthy grand jury report in Chicago that severely criticized police and prosecutor conduct during 'a raid' in which two members of the Black Panther were killed."