In re April 1977 GRAND JURY SUBPOENAS.

GENERAL MOTORS CORPORATION, Appellant,

v.

UNITED STATES of America, Appellee.

No. 77–1599.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1977.

Decided April 5, 1978.

George J. Moscarino, Hugh Calkins, Robert C. Kahrl, Paul M. Pohl, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Julius L. Russu, Otis M. Smith, General Motors Corp., Detroit, Mich., for appellant.

James K. Robinson, U. S. Atty., Detroit, Mich., Willard C. McBride, Tax Div., Dept. of Justice, Washington, D. C., M. Carr Ferguson, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., Ernest J. Brown, Robert E. Lindsay, Charles E. Brookhart, James A. Bruton, Washington, D. C., for appellee.

Before WEICK, CELEBREZZE and MERRITT, Circuit Judges.

WEICK, Circuit Judge.

General Motors Corporation (GM) has perfected an interlocutory appeal to this Court from an order of the District Court denying GM's motion for a protective order seeking *inter alia* the disqualification of Meno W. Piliaris, an Internal Revenue Service (IRS) attorney, from participating in the conduct of a grand jury proceeding investigating alleged income tax evasions by GM. GM contends that such participation by Piliaris is unlawful and creates a conflict of interest or an appearance of such a conflict.

I

THE FACTS

During a 1975 audit by IRS of GM's 1972 income tax returns questions arose concerning the propriety of GM's deductions from income of the cost of expense materials when purchased.[1] IRS was of the view that expense materials which were on hand and unconsumed at the end of the tax year on December 31, 1972 should have been treated as inventory; and that if such materials were treated as expenses when purchased the expense should have been decreased by the amount of expense materials on hand or unconsumed on December 31, 1972, thereby increasing the amount of taxable income. IRS requested GM to determine its inventory of expense materials as of December 31, 1975; and this figure was to be extrapolated back to 1972 to arrive at an estimated inventory for that year.

GM conducted the survey. IRS, however, questioned its accuracy. GM contends that agents of IRS began a series of visits to the plants of GM, and they berated GM employees, using abusive tactics and improper behavior. GM filed affidavits with IRS relative to this misconduct, but GM asserts that IRS made no investigation. IRS, believing that GM employees had falsified the survey, stopped routine audit functions and the case was referred to the Intelligence Division of IRS for an investigation to determine whether false or fraudulent statements were made to it, in violation of 18 U.S.C. § 1001.

Special agents of the Intelligence Division made several requests for the production of records and documents. When certain records were not produced, a recommendation was made to the Justice Department that a grand jury investigation be made to determine possible violations of the criminal laws by GM.

In February 1977 such an investigation was approved. Willard McBride and Robert Forrest, attorneys from the Tax Division, Department of Justice, were appointed as special attorneys to conduct the grand jury investigation. They in turn sought the assistance of Piliaris, who was an attorney and accountant employed the Office of Regional Counsel, Internal Revenue Service in Cincinnati, Ohio, and who was familiar with the GM income tax investigation. He had drafted the letter from the Regional Counsel to the Justice Department recommending a grand jury investigation. The letter stated that at the appropriate time IRS would request an order from the Court authorizing the disclosure of grand jury information to IRS. Piliaris also drafted a memorandum describing a meeting in which he participated and in which IRS planned its handling of the GM matter in coordination with the proposed grand jury proceedings. He was also familiar with the nature of the criminal investigation. On April 15, 1977 Piliaris was designated by Acting Associate Attorney General Modlin

---

1. Expense materials are those items which are used in production but which do not become a part of the finished product, such as spare parts for machinery.

as a special attorney for the United States, empowered to assist in conducting the proceeding before the grand jury, although counsel admitted that he remained on the payroll of IRS.

Numerous grand jury subpoenas were served on GM and on GM employees. GM responded by filing motions to quash and for a protective order which asked the District Court to prohibit the disclosure of grand jury evidence to IRS employees. As a result of these motions the Government suspended the grand jury investigation to await the District Court's ruling on the motions. Subsequently GM learned of the contemplated use of IRS attorney Piliaris as a special attorney before the grand jury. GM then filed a motion seeking an order prohibiting Piliaris from participating in conducting the proceeding, or scrutinizing grand jury materials.

The District Court on June 30th entered orders denying GM's motions with respect to the subpoenas and the disqualification of Piliaris, and granted in part GM's motion for a protective order with regard to the disclosure of grand jury evidence to IRS agents assisting the investigation.

GM filed both a notice of appeal and a motion for a stay of the grand jury proceeding pending appeal. The District Court denied the motion for a stay; and GM immediately filed in this Court a motion to stay the grand jury proceeding. Circuit Judge Engel denied the motion for a stay on the ground that no final appealable order had been entered.

The grand jury investigation then resumed with Piliaris's active participation.

GM filed a motion requesting the District Court to amend the orders of June 30th to include a statement allowing an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). This motion was denied with respect to all of the Court's orders except the one denying GM's motion to disqualify Piliaris from conducting the grand jury proceeding. The District Court accordingly amended its order of June 30th so as to provide:

> The undersigned is of the opinion that this order involves a controlling question

of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from this order as authorized by 28 U.S.C. § 1292(b) may materially advance the ultimate termination of this litigation.

This Court granted the Government's motion to dismiss GM's direct appeal of the District Court's orders on the ground that the orders were not appealable. In the same order we granted leave to GM to appeal under 28 U.S.C. § 1292(b) from the order denying GM's motion to disqualify Piliaris from acting as a Government attorney in the presentation of the case before the grand jury.

## II

### JURISDICTION

At the outset the Government contends that we have no jurisdiction of the interlocutory appeal under Section 1292(b). It asserts that this section by its express terms applies only to *civil* actions, and that a grand jury investigation is a criminal proceeding and is not a civil action. The Government has not cited a single case to us which so holds. Interlocutory appeals under Section 1292(b) were allowed in the following cases: *In Re Grand Jury Impaneled Jan. 21, 1975*, 541 F.2d 373 (3d Cir. 1976); *In Re Grand Jury Investigation*, 338 F.Supp. 1379 (W.D.Pa.1972).

 A grand jury proceeding constitutes "a judicial inquiry." *Cobbledick v. United States*, 309 U.S. 323, 327, 60 S.Ct. 540, 84 L.Ed. 783 (1940). It is a grand inquest with powers of investigation and inquisition. The function of the grand jury is to determine whether there is probable cause to believe that a crime has been committed and to protect citizens against unfounded criminal prosecutions. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), *aff'g* 455 F.2d 750 (6th Cir. 1972); *Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962). The proceeding becomes criminal as to a defendant when the grand jury returns

an indictment against him. *Post v. United States,* 161 U.S. 583, 587, 16 S.Ct. 611, 40 L.Ed. 816 (1896).

■ Merely because a witness has been subpoenaed to testify and to bring his records before a grand jury, does not involve the witness in a criminal action. If the witness refuses to answer a question on the ground that it tends to incriminate him, and the Court finds him guilty of contempt, he has the right to a direct appeal under Section 1291. *In Re Grand Jury Impaneled Jan. 21, 1975, supra.*

■ Where the witness files a motion to quash a subpoena duces tecum on Fifth Amendment grounds, the Court, instead of finding him guilty and punishing him for contempt, from which a direct appeal could be taken, may certify an interlocutory appeal under Section 1292(b). *In Re Grand Jury Investigation, supra.*

Even in a criminal case where a witness had been served with a subpoena duces tecum to bring his tapes and other records, and the Court denied a motion to quash, the Supreme Court held that the witness was entitled to a direct appeal from the order rather than to be subjected to a contempt charge. *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).[2] *Cf. Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (1st Syl.).

■ The proceedings before the grand jury thus far have been protracted. They should not be converted into a minitrial. If we hold that GM has no right of appellate review GM and the Government could be subjected to a protracted trial and considerable unnecessary expense if an indictment results and the trial court or this Court, on review, holds that the procedure followed was unlawful. Judicial supervision should prevent a wrong before it occurs.

But we need not determine this issue anew because another panel of this Court has considered the Government's motion to dismiss GM's direct appeal under Section 1291 and GM's petition for leave to file an interlocutory appeal under Section 1292(b). The issues were fully briefed and the same contentions made by the parties before that panel are repeated here. The panel granted the Government's motion to dismiss GM's appeal and also granted GM's petition for leave to file an interlocutory appeal. GM filed its interlocutory appeal pursuant to the order of this Court. We decline to vacate the order allowing the interlocutory appeal.

■ Even if the order sought to be reviewed is nonappealable under Section 1291 or under Section 1292(b), we hold that the issues presented are subject to review by mandamus, and accordingly we treat this interlocutory appeal as a petition for a writ of mandamus under the All Writs Statute, 28 U.S.C. § 1651. *Young Properties Corp. v. United Equity Corp.,* 534 F.2d 847, 854 (9th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976); *United States v. Briggs,* 514 F.2d 794, 808 (5th Cir. 1975); *Application of Johnson,* 484 F.2d 791, 794 n.2 (7th Cir. 1973); *In re Harmon,* 425 F.2d 916, 918 (1st Cir. 1970); *International Prods. Corp. v. Koons,* 325 F.2d 403, 407 (2d Cir. 1963); *International Nickel Co. v. Martin J. Barry, Inc.,* 204 F.2d 583, 585 (4th Cir. 1953); *Shapiro v. Bonanza Hotel Co.,* 185 F.2d 777, 779 (9th Cir. 1950).[3]

■ Courts of Appeals, pursuant to their supervisory powers, may review in a mandamus proceeding questions of unusual importance necessary to the economical and efficient administration of justice. *Schlangenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *LaBuy v. Howes*

---

**2.** In the dissenting opinion filed by Circuit Judge Merritt he undertakes to distinguish *Nixon* on the ground that that case involved the President of the United States; but if the Appellate Court was without jurisdiction of Mr. Nixon's appeal, the fact that Mr. Nixon was President would not confer appellate jurisdiction upon the Court. Any private citizen, including GM, would be entitled to the same treatment as Mr. Nixon, and to deny that treatment would deprive the citizen of due process of law and of the equal protection of the law.

**3.** Despite this wealth of authority, the dissent would deny this Court its right to exercise its supervisory powers under the All Writs Act.

*Leather Co.*, 352 U.S. 249, 259–60, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). *See Will v. United States*, 389 U.S. 90, 107, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).

Such supervisory jurisdiction may arise to correct errors or abuses of discretion on the part of the District Courts in connection with grand jury proceedings. *Application of Johnson, supra* at 795; *United States v. United States Dist. Court for the S. Dist. of W. Va.*, 238 F.2d 713, 719 (4th Cir. 1956); *cf. United States v. Briggs, supra; Continental Oil Co. v. United States*, 330 F.2d 347, 349 (9th Cir. 1964).

Clearly this is an exceptional case. If GM's assertion concerning the impropriety of Piliaris's presence before the grand jury is correct, not only will a great waste of both time and money ensue in permitting the grand jury to continue its investigation, but such waste will be substantially enlarged if an indictment is returned and GM is forced to go to trial.

If this is not enough, this appeal presents important issues of first impression. As was stated in *United States v. United States Dist. Court for the E. Dist. of Mich., S. Div.*, 444 F.2d 651, 656 (6th Cir. 1971), *aff'd*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), quoting from *Schlangenhauf v. Holder, supra*, 379 U.S. at 110, 85 S.Ct. 234:

> The courts of appeals have the power to review by mandamus "an issue of first impression" involving a "basic undecided problem."

*Cf. Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 352–53, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976).

In *United States v. King*, 157 U.S.App. D.C. 179, 482 F.2d 768 (1973), it was held:

> An accused who has been deprived of a substantial right at his preliminary hearing can seek relief by way of habeas corpus or mandamus.

## III

## AUTHORITY TO APPOINT SPECIAL ATTORNEYS

■ GM has questioned the authority of the Attorney General to appoint an administrative agency attorney such as Piliaris as a special attorney. In our opinion this authority is conferred by 28 U.S.C. §§ 515(a), 543. See H.R.Rep. No. 2901, 59th Cong., 1st Sess. 1–2 (1906); *cf. Schebergen v. United States*, 536 F.2d 674 (6th Cir. 1976); *In re Grand Jury Subpoenas of Persico*, 522 F.2d 41 (2d Cir. 1975).

Nothing precluding such an appointment is found in the Federal Rules of Criminal Procedure. Rule 6(d) of Fed.R.Crim.P. provides that "attorneys for the government" may be present during grand jury sessions. Rule 54(c) defines attorneys for the government as including "the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney . . . ." The original Advisory Committee Notes to Rules 6(d) and 54(c) indicate that they are to be read in conjunction with existing statutes, including 28 U.S.C. § 515(a) (previously codified at 5 U.S.C. § 310). 18 U.S.C.A. annots. to Rules 6(d) and 54(c); *In re Grand Jury Subpoenas of Persico, supra* at 66; *United States v. DiGirlomo*, 393 F.Supp. 997, 1000–01 & n.2 (W.D.Mo.), *aff'd* 520 F.2d 372 (8th Cir.), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975). Accordingly, special attorneys appointed pursuant to Sections 515(a) and 543 are authorized assistants of the Attorney General under Rule 54(c), and are therefore attorneys for the Government within the meaning of Rule 6(d). *Little v. United States*, 524 F.2d 335, 336 (8th Cir.), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 326 (1976).

## IV

## DISQUALIFICATION OF PILIARIS

■ The final question is whether Piliaris, on ethical grounds, was disqualified to conduct proceedings before the grand jury as a special attorney for the Government while remaining on the payroll of IRS.

The ABA Standards Relating to the Prosecution Function provide in material part:

A prosecutor should avoid the appearance or reality of a conflict of interest with respect to his official duties.

(Approved Draft 1971, pt. 1, Std. 1.2(a).) Commentary.

Section 2.3(b) of these standards recommends that the offices of chief prosecutor and his assistants be full-time occupations. The commentary to that subsection points out the potential conflicts of interest which may arise from part-time devotion to the duties of public prosecutor. The instant standard complements section 2.3(b) and at the same time points out situations of likely conflicts of interest. When a conflict of interest may arise the prosecutor should recuse himself and make appropriate arrangements for the handling of the particular matter by other counsel in accordance with the principles of section 2.10, *infra*. It is of the utmost importance that the prosecutor avoid participation in a case in circumstances where any implication of partiality may cast a shadow over the integrity of his office.

Canon 9 of the Code of Professional Responsibility provides:

A lawyer should avoid even the appearance of professional impropriety.

The evidence does not disclose anything actually unlawful on the part of Piliaris in accepting his appointment. The District Court made no findings of any actual conflict of interest. We consider only the appearance of a conflict of interest which, in our opinion, was established by the evidence in this case, and the District Court should have so found. As was stated by Chief Judge Irving R. Kaufman in *General Motors Corp. v. City of New York*, 501 F.2d 639, 649 (2d Cir. 1974), in which no actual impropriety was claimed:

[W]e must act with scrupulous care to avoid any *appearance* of impropriety lest it taint both the public and private segments of the legal profession.

This appearance of impropriety arises by reason of the prior connection of Mr. Piliaris with the investigation by IRS of the income tax returns of GM and the recommendations in which he participated when he was serving as attorney for IRS in Cincinnati. It was Piliaris who, while acting for IRS, wrote the letter to the Department of Justice recommending the grand jury investigation of GM. Piliaris, in that letter, stated that at the appropriate time IRS would request an order from the court authorizing the disclosure of grand jury information to IRS under the provisions of Rule 6(e) of the Fed.R.Crim.P. Shortly prior to his appointment as special attorney Piliaris wrote a memorandum describing an IRS meeting which he attended, at which was planned the conduct of its own handling of the GM matter in coordination with the proposed grand jury investigation. Some IRS employees were assigned to various aspects of the investigation and IRS would defer GM's request for civil tax ruling pending the grand jury investigation.

It is clear that the Department of Justice attorneys were interested only in the criminal aspects of the case, whereas IRS was interested in the civil aspects and contemplated asking the Court to permit the use of the grand jury material in its civil matters which included GM's 1972 returns and also later returns which have not been audited.

In *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), Mr. Justice Douglas, who wrote the opinion for the Court, spoke out against "using criminal procedures to elicit evidence in a civil case. If the prosecution were using that device, it would be flouting the policy of the law."

Congress has granted to IRS adequate powers of investigation with respect to civil matters, and it should not be necessary for IRS to conduct a grand jury investigation in order to obtain evidence for its use in civil cases. 26 U.S.C. § 7601, *et seq.*

GM asserts that Piliaris, in conducting the grand jury proceeding, could be interested in obtaining an indictment in order to justify the IRS recommendation to the Department of Justice for a grand jury investigation.

GM also claims that Piliaris might not be interested in investigating GM's charges of misconduct on the part of IRS agents in connection with the audit.

GM further complains about the presence of Piliaris in the secret hearings before the grand jury where it would be possible for him to have access to evidence which IRS could use in civil matters against GM, not only with respect to its tax return for 1972, but also with respect to its returns for subsequent years. Piliaris has been placed in a conflicting and intolerable position.

It should also be remembered that the function of the prosecutor, as was held in *United States v. Calandra, supra,* in addition to obtaining an indictment where probable cause has been shown that a crime has been committed, is also to protect citizens against unfounded criminal prosecution.

In *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962), Mr. Chief Justice Warren, writing the opinion for the Court, described the function of a grand jury with respect to its protection of the rights of citizens, in stronger terms, stating:

> Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

In the present case the worry of GM is that Piliaris has an axe to grind and is more interested in justifying his previous investigations, his recommendations, and the conduct of IRS agents than in protecting GM against unfounded criminal prosecution. It is our duty to determine these important questions now, and not to await review of a possible protracted criminal trial, and not to permit the conduct of grand jury procedures for civil purposes.

In a hearing in the District Court the following exchange took place between the Court and the Government attorney:

THE COURT: Why can't you take any Internal Revenue Service lawyer and make him a special attorney by appointment and turn the grand jury investigation over to him, let him run the whole show?

MR. McBRIDE: Conceivably that could be done.

THE COURT: You are saying that would be appropriate?

MR. McBRIDE: Yes, your Honor, for this reason—

THE COURT: I ought not be concerned with it?

MR. McBRIDE: Again for this reason that the law, Section 515 and 543 of Title 28, does not put any limits on the authority of the attorney general. It puts him in control and GM, nor the Court, if I may be forgiven to say so, are not, I think, in a position, and GM should not be able to dictate who it will have conducting this grand jury or to assist in the conduct of this grand jury as it has also been trying to dictate who would be persons to assist the government attorneys and suggesting that we have other people.[4] [A. 261–62]

As we have held, the power of appointment resides in the Attorney General or in his designated assistant. This power of appointment does not authorize the Attorney General, or his associate, to appoint an attorney who has a conflict of interest or an appearance of a conflict, nor does it immunize such an appointment so as to prevent judicial review. The courts have jurisdiction in a proper case to decide whether such conflict or appearance of conflict exists.

---

**4.** It does seem to be anomalous that the attorney for the person being investigated is not permitted to appear before the grand jury and represent his client but is excluded, while here the attorney on the payroll of the Agency instigating the investigation was authorized not only to appear but also to conduct the grand jury proceeding. We do not believe it to be appropriate for either of these attorneys to appear and represent their respective clients before the grand jury.

In considering the advisability of the appointment of attorneys representing various administrative agencies as special attorneys to conduct grand jury proceedings, the appointing authority in the future might well look into the question of conflict of interest or the appearance of conflict, in order to obviate judicial review.

In *United States v. Braniff Airways, Inc.*, 428 F.Supp. 579 (W.D.Tex.1977), the District Court was faced with a somewhat similar situation. There, Burton Kolko, the former Chief of the Agreements Division of the Civil Aeronautics Board, and who had become a permanent attorney of the Anti-Trust Division of the Department of Justice, was commissioned as a special attorney to assist in and to conduct a grand jury investigation of an alleged conspiracy by certain airlines to exclude other airlines from doing business in the Southwest, in violation of the antitrust laws. Certain agreements between the airlines that the Government believed were a part of the alleged conspiracy, had been reviewed by Kolko while he was employed by the CAB. The District Court held that his presence in the grand jury room vitiated the indictment of Braniff. The Court stated, at 583 and 589:

Although there may have been no intention of wrongdoing, it is indeed strange to find a former high CAB official who had passed upon many of the matters under investigation, to be present in a grand jury room where those very matters are under consideration, irrespective of the capacity in which he presented himself. . . . Whether or not Mr. Kolko was known to the grand jury as a former CAB official cannot be ascertained.

Although Mr. Kolko . . . stated he expressed his surprise and chagrin in learning that one or more of the matters which he had passed upon while at the CAB were in fact under investigation by the grand jury, nothing whatever was done to rectify the situation prior to, during, or following Mr. Kolko's appearances in the grand jury room. . . . Neither Mr. Kolko, nor . . . anyone else appears to have recognized any impropriety in placing Mr. Kolko before the grand jury in this proceeding. The courts have expressed a deep concern, and rightly so, that government attorneys be subject to exacting standards which negate conflicts of interest, and more so that their conduct may not suggest even an appearance of impropriety. [*Id.* at 583]

The Court is further of the opinion and so finds that the employment, assignment, and appearance as an observer or as a prosecutor of Mr. Burton S. Kolko before the grand jury under the circumstances surrounding his former employment as a Civil Aeronautics Board official, constituted him an unauthorized person in the grand jury room during proceedings held in this case, and is an independent ground sufficient to vitiate the indictment. [*Id.* at 589]

In *American Cyanamid Co. v. FTC*, 363 F.2d 757, 767 (6th Cir. 1966), this Court disqualified the Chairman of the Federal Trade Commission from hearing a case because of his prior connection with it, and held that his participation in the case deprived the petitioners of due process of law, and invalidated the order under review. Circuit Judge Phillips (now Chief Judge), who wrote the opinion for the Court, stated:

It is fundamental that both unfairness and the appearance of unfairness should be avoided. Wherever there may be reasonable suspicion of unfairness, it is best to disqualify. See Prejudice and the Administrative Process, 59 Nw.U.L.Rev. 216, 231 (1964); Disqualification of Administrative Officials for Bias, 13 Vand.L.Rev. 713, 727 (1960).

It is to be emphasized that the Commission is a fact-finding body. As Chairman, Mr. Dixon sat with the other members as triers of the facts and joined in making the factual determination upon which the order of the Commission is based. As counsel for the Senate Subcommittee, he had investigated and developed many of these same facts.

Although the agency in the *Cyanamid* case performed quasi-judicial functions, the legal principles are the same.

Other issues are raised by GM which include the conduct by the District Judge of an in camera hearing permitting only counsel for the Government to appear and excluding counsel for GM, *cf. United States v. Wind,* 527 F.2d 672 (6th Cir. 1975); and also the entry of an order, copies of which were not furnished to counsel for GM. In view of our disposition of this appeal it is not necessary that we pass upon these issues.

The judgment of the District Court is reversed and the cause is remanded with instructions to terminate the grand jury investigation as invalid, and to enter necessary protective orders relative to the use of the grand jury information.

MERRITT, Judge, dissenting.

The majority has concluded that this case is now ripe for review and, reaching the merits, that the Attorney General's appointment of an IRS lawyer to conduct a Grand Jury investigation of General Motors in Detroit is unethical under the ABA Code of Professional Responsibility. I disagree with both conclusions.

## I. STATEMENT OF THE CASE

In February, 1977, the Department of Justice approved the convening of a special federal grand jury in Detroit to investigate possible criminal tax violations by General Motors. On April 15, 1977, the Attorney General appointed an IRS lawyer to assist Justice Department lawyers in conducting the grand jury inquiry. General Motors moved to disqualify the IRS lawyer from participation in the grand jury proceedings on the grounds that public policy considerations and conflict-of-interest principles of the legal profession prohibit such participation by IRS lawyers who have previously participated in a civil tax investigation of the taxpayer.

Finding that the Attorney General's action is specifically authorized by statute, 28 U.S.C. §§ 515, 543 (1970), the District Judge overruled General Motors' motion to disqualify but certified the issue to us under the Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b) (1970) as a "controlling question"—apparently on the ground that, if the District Court's ruling were later found to be erroneous, the presence of an IRS lawyer in the grand jury room might void any indictment returned by the grand jury against General Motors or its officials. General Motors pursued its appeal to this Court under the Interlocutory Appeals Act, and it also appealed under 28 U.S.C. § 1291, treating the order as a "final decision" for purposes of review. General Motors did not file an application for mandamus against the District Judge.

The government then moved to dismiss both appeals, the § 1291 appeal on the grounds that the lower court order overruling General Motors' motion to disqualify was interlocutory and not final, and the § 1292(b) interlocutory appeal on the grounds that such piecemeal appeals are not allowed in criminal cases. A panel of this Court consisting of Judges Weick, Edwards and Celebrezze entered an order on October 3, 1977, dismissing General Motors' § 1291 appeal but granting General Motors leave to proceed under § 1292(b).[1]

## II. THE QUESTION OF APPELLATE JURISDICTION

The District Court's order is not reviewable under the Interlocutory Appeals Act, or as a final decision under § 1291 or on mandamus.

The Interlocutory Appeals Act of 1958 authorizes an appeal of an interim or nonfinal decision "in a *civil* action" upon a certification by the District Judge that his

---

1. The question arose on the Court's weekly Administrative or Motion Docket and was decided without oral argument or regular conference consideration. We are not bound by the first panel's decision. See *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed.

1152 (1912); *Petition of United States Steel Corporation,* 479 F.2d 489, 494 (6th Cir. 1973); *Potomac Passengers Association v. Chesapeake & Ohio Ry. Co.,* 171 U.S.App.D.C. 359, 363, 520 F.2d 91, 95 n. 22 (1975); 1B Moore, *Federal Practice* § 0.404.

decision raises a "controlling question of law as to which there is substantial grounds for difference of opinion," the decision of which "may materially advance the ultimate termination of the litigation." The statute in question establishes the right of interlocutory appeal in *civil* cases but it extinguishes that right in *criminal* cases. General Motors' appeal in this case should be characterized as a criminal and not a civil appeal and, therefore, we lack jurisdiction under the Interlocutory Appeals Act.

*Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940) strongly supports the view that this case is a criminal rather than civil appeal and therefore is not reviewable under the Interlocutory Appeals Act or § 1291. There, the Supreme Court decided that a District Court order overruling a motion to quash a grand jury subpoena was not a final appealable order under § 1291. Holding that a grand jury proceeding is part of the criminal process, the Supreme Court based its ruling on the historic principle of judicial administration "forbidding piecemeal disposition" and "separate review of the component elements" of criminal cases. The principle is designed to conserve judicial time and prevent delaying tactics in criminal proceedings. Noting that the Fifth Amendment makes the grand jury a necessary part of the criminal process, Justice Frankfurter, writing for the Court, explained that "it is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found."

In *U. S. v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971) the Supreme Court recently reaffirmed the holding of *Cobbledick* and the principles on which it is based, observing that non-compliance resulting in a contempt citation is the only way to obtain review of such a grand jury question in advance of indictment and trial:

[W]e have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of· an adjudication of contempt if his claims are rejected on appeal. *Id.* at 532–33, 91 S.Ct. at 1582, 29 L.Ed.2d at 88–89.

General Motors as the target of the Grand Jury investigation has the same appellate remedies that were available in *Ryan.* It can raise the disqualification of counsel issue after indictment and conviction, the normal course of review in criminal cases, or it can refuse to obey grand jury subpoenas on this ground and appeal a contempt citation. These are the usual remedies, and they are adequate.[2]

Justice Frankfurter in *Cobbledick* and Justice Brennan in *Ryan* apply these principles of appellate review in order to prevent piecemeal appeals from grand jury activity under § 1291, but the Interlocutory Appeals Act, passed eighteen years after the *Cobbledick* decision, is based on the same set of principles forbidding piecemeal consideration of criminal cases. The Act limits interim review of "a controlling question of law" to *civil* cases only and, therefore, should not be read to allow piecemeal review of grand jury activity.

It is true, as the majority opinion suggests, that the Supreme Court made an exception to the *Cobbledick-Ryan* principle in the *Nixon Tapes* case, characterizing as a "final, appealable order" Judge Sirica's denial of the President's motion to quash the subpoena duces tecum, an order that in other circumstances would not be considered "final" under § 1291. After reaffirming *Cobbledick* and *Ryan,* the Court states the reason for making an exception in that case:

---

2. Compare the *civil* cases on the subject of interlocutory appellate review of orders denying disqualification of counsel, discussed in a case note in 30 *Vand.L.Rev.* 259 (1977), written by Sara Porter Walsh.

[T]he traditional contempt avenue to immediate appeal is peculiarly inappropriate due to the unique setting in which the question arises. To require a President of the United States to place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling would be unseemly, and would present an unnecessary occasion for constitutional confrontation between two branches of the Government. Similarly, a federal judge should not be placed in the posture of issuing a citation to a President simply in order to invoke review.

*U. S. v. Nixon,* 418 U.S. 683, 691–92 [94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039] (1974).

The *Nixon* case is, therefore, distinguishable, unless we think that General Motors is in the same position as the President and cannot be investigated by a grand jury without causing a "constitutional confrontation."

Nor should we review this case on mandamus. General Motors has not applied for a writ of mandamus against the District Judge, and the principles discussed in *Cobbledick* and *Ryan* apply in double measure to the use of the extraordinary remedy of mandamus as a means of piecemeal review in criminal cases. Reasoning that mandamus may only be used in "exceptional circumstances amounting to a judicial 'usurpation of power,'" the Court in *United States v. Will,* 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) rejected the government's mandamus action to compel a district judge to limit pretrial discovery in a criminal case, adding that "this general policy against piecemeal appeals [by mandamus] takes on added weight in criminal cases." *Id.* at 95, 88 S.Ct. at 274.

The district judge below has handled General Motors' claim with deliberation, patience and forbearance, in my opinion, and is not guilty of "judicial usurpation."

## III. THE CONFLICT–OF–INTEREST QUESTION

The Court holds that the IRS lawyer is disqualified under Canon 9 of the ABA Code of Professional Responsibility after conceding that the Attorney General appointed the lawyer in accordance with specific statutory authority. granting him the power to appoint a lawyer to represent the government for a particular case or grand jury investigation. Canon 9 provides that "a lawyer should avoid even the appearance of professional impropriety."

In this case the lawyer has not accepted new employment that either creates a conflict of interest or creates the appearance of a conflict of interest. There is no conflict of interest between the Department of Justice and the Internal Revenue Service. If the lawyer had left General Motors to participate in the grand jury proceedings, General Motors would be entitled to have the lawyer disqualified on grounds of conflict of interest. In tax cases, however, the investigative arm of the government, the IRS, and the litigative arm, the Department of Justice, must exchange information; and they may also exchange the people in the departments who have the information.

In a civil tax investigation of General Motors, the IRS uncovered information which led it to suspect criminal tax fraud. It gave the information to the Justice Department which initiated a grand jury investigation and deputized an IRS lawyer familiar with the facts so that he could participate in the grand jury investigation—a natural, not a sinister, sequence of events.

Here the majority seems to have confused the demands of the canons of ethics of lawyers with the code of conduct of judges. In its opinion, the majority relies upon two cases, *American Cyanamid Co. v. FTC,* 363 F.2d 757 (6th Cir. 1966), and *United States v. Braniff Airways, Inc.,* 428 F.Supp. 579 (W.D.Tex.1977). In *American Cyanamid* this Court on due process grounds overturned a decision of the FTC because one of the judges participating in the decision had conducted a legislative investigation of the same facts while serving as chief counsel of a Senate Subcommittee. We must recognize, however, that while litigants are entitled to an impartial tribu-

nal, as in that case, they may not demand a neutral prosecutor, as in this case. A judge should disqualify himself from a case he participated in as a lawyer, but a prosecutor need not disqualify himself because he has previously conducted other investigations of the same suspect, whether for the same or a different governmental agency. The court in this case conflates these two separate principles which draw a distinction between judges and prosecutors; but the court is not alone in its confusion, for in the other case cited, the *Braniff Airways* case, the district judge there made the same mistake when he barred a Justice Department anti-trust lawyer, formerly employed by the Civil Aeronautics Board, from conducting a grand jury investigation of alleged anti-trust violations by *Braniff.*

## IV. CONCLUSION

In light of the above discussion, I would conclude that neither appellate jurisdiction nor a conflict of interest exists in this case. In addition, both conclusions are strongly supported by the most recent amendment to Rule 6(e) of the Federal Rules of Criminal Procedure [3] governing the use of evidence developed by a grand jury. The stated reasons for the amendment neatly tie together both of the issues presented by this case and prove to me that Congress did not think that this situation creates a conflict of interest or that the proceedings of the grand jury should be interrupted by interlocutory appeals.

1. *Exchange of Grand Jury Information.* Under the new Rule 6(e), most grand jury proceedings may be disclosed to "an attorney for the government" or "to such governmental personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law." Under the old rule, disclosure could be made *only* to "attorneys for the government," but not to other "government personnel."

The Senate Report on the proposed amendment states that the purpose of the change is to facilitate the kind of intra-government cooperation which occurred in this case and to enable federal prosecutors in grand jury proceedings to benefit from the expertise of agents from other departments and agencies of government:

> Attorneys for the Government in the performance of their duties with a grand jury must possess the authority to utilize the services of other government employees. Federal crimes are "investigated" by the FBI, by *the IRS*, or by Treasury agents and not by government prosecutors or the citizens who sit on grand juries. Federal agents gather and present information relating to criminal behavior to prosecutors who analyze and evaluate it and present it to grand juries. Often the prosecutors need the assistance of the agents in evaluating evidence. Also, if further investigation is required during or after grand jury proceedings, or even during the course of criminal trials, the Federal agents must do it. *There is no reason for a barrier of secrecy to exist between the facets of the criminal justice system upon which we all depend to enforce the criminal laws.* Sen. Rep. No. 95–354, 95th Cong., 1st Sess., July 20, 1977, *reprinted in* U.S.Code Cong. & Admin.News 1977, pp. 527, 530 (emphasis added).

The Senate Report goes on to say that there is "no intent to preclude the use of grand-jury developed evidence for civil law enforcement purposes. On the contrary, there is no reason why such use is improper, assuming that the grand jury was utilized for the legitimate purpose of criminal investigation." *Id.* at 532. There is no showing in this case, and no finding by the Court below, that the government is using the grand jury for impermissible purposes or that the exchange of information or employees between the IRS and the Justice Department is improper.

2. *Interlocutory Review of Grand Jury Proceedings.* The old Rule 6(e), according to the Senate Report, had created a "state

3. P.L. 95–78, 95th Cong., 1st Sess., 91 Stat. 391 (1977).

of uncertainty" and was "spawning some judicial decisions highly restrictive of the use of government experts" and other decisions "that make Rule 6(e) orders subject to interlocutory appeal." *Id.* at 530. The Report suggests that such appeals should not be allowed for the reasons given by Justice Frankfurter in the *Cobbledick* decision and quotes the following language from that opinion: "It is no less important to safeguard against undue interruption the inquiry instituted by a grand jury than to protect from delay the progress of the trial after an indictment has been found." 309 U.S. at 327, 60 S.Ct. at 542, 84 L.Ed. at 786. Thus, in amending Rule 6(e), Congress has once again adhered to the historic principle disallowing piecemeal review of criminal cases, just as it did when it passed the Interlocutory Appeals Act of 1958.