**In re Paul PERLIN, a Witness before the April 1977 Grand Jury, Paul Perlin, Respondent-Appellant.**

No. 78–2139.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 3, 1978.

Decided Oct. 4, 1978.*

Opinion Nov. 13, 1978.*

Rehearing and Rehearing En Banc Denied Dec. 15, 1978.

\* This appeal was decided by unpublished order without opinion on October 4, 1978, so as to satisfy the time limits of the Recalcitrant Witness Statute, 28 U.S.C. § 1826.

William J. Martin, Chicago, Ill., for respondent-appellant.

Stephen J. Senderowitz, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before CUMMINGS, PELL and TONE, Circuit Judges.

PER CURIAM.

Paul Perlin refused to testify under a grant of immunity before the Special April 1977 Grand Jury investigating commodities trading in Chicago. He was held in contempt and ordered committed. On appeal he argues that there was so substantial a conflict of interest, or appearance of conflict, in the appearance before the grand jury, as a Special Assistant U.S. Attorney, of the Commodities Futures Trading Commission (CFTC) attorney who had initially

recommended the criminal prosecution that the grand jury was tainted and its termination required. It was therefore, he argues, without power to compel his testimony. Although the propriety of agency attorneys appearing before the grand jury as special assistant U.S. attorneys has been frequently questioned in recent months, the question has not yet been conclusively resolved.[1] It is of considerable importance to the administration of criminal justice.

## FACTS

In 1975 the newly formed CFTC began investigations of illegal transactions on the Chicago Board of Trade. Michael Koblenz, an attorney with the CFTC in Washington, D.C., worked on the investigation of trading in the soybean pit. These investigations resulted in an administrative complaint against a number of people charging violations of the Commodity Futures Trading Act. At the same time, Koblenz referred criminal violations and related tax violations to the U.S. Attorney's Office in Chicago for prosecution. Koblenz spoke with an assistant U.S. attorney who on March 9, 1976, wrote William Schief, Director of the Division of Enforcement of the CFTC in Washington noting that the two offices were conducting parallel investigations and suggesting the appointment of Michael Koblenz as a Special Assistant U.S. Attorney. Koblenz was appointed on May 21, 1976, pursuant to 28 U.S.C. § 515 and § 543. Given the complexity of commodity trading, the U.S. Attorney's Office needed assistance in assessing information developed by the grand jury, and to that end Judge Parsons entered an order on June 9, 1976, authorizing disclosure of grand jury materials to employees of the CFTC, the IRS and the Postal Service, pursuant to Fed.R.Crim.P. 6(e), *infra* pp. 266–267. A similar order

of August 19, 1976, extended the disclosure to a new area of the commodities investigation. The orders named no specific agency employees and were interpreted by CFTC as authorizing disclosure to all investigators and attorneys within the CFTC Division of Enforcement.[2]

Pursuant to these Rule 6(e) orders, certain CFTC personnel were assigned to assist in the grand jury investigation, and in practice, disclosure was limited to those four or five and their superiors. To protect the secrecy of the grand jury materials, Koblenz, following the suggestions of *Robert Hawthorne, Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098 (E.D.Pa. 1976), had the materials placed in a restricted-access safe, had the investigative staff sworn as agents of the grand jury, and instructed them on the importance of secrecy. There is no issue here regarding the adequacy of those precautions or the appropriateness of disclosure to the investigative personnel.

The grand jury investigation into trading in the soybean pit was expanded in the summer of 1976 when the CFTC referred to the U.S. Attorney an investigation into trading on the Chicago Mercantile Exchange, International Monetary Market Division. In the fall of 1976, the U.S. Attorney, acting on independent information, initiated his own investigation into trading in the silver pit of the Chicago Board of Trade. This investigation was not referred from the CFTC. All three investigations were conducted by the February 1975 Grand Jury and its successor, the April 1977 Grand Jury.

Koblenz and an assistant, Charlotte Ohmiller, prepared investigative reports for the U.S. Attorney's Office regarding their findings, including analyses of documents subpoenaed by the Grand Jury, and Koblenz gave copies of these reports to Schief, the

1. *In Re April 1977 Grand Jury Subpoenas (General Motors Corp.)*, 573 F.2d 936 (6th Cir. 1978), appeal dismissed *en banc,* 584 F.2d 1366 (6th Cir. 1978); *In Re Grand Jury Subpoenas, April 1978, at Baltimore,* 581 F.2d 1103 (4th Cir. 1978); *United States v. Dondich,* 460 F.Supp. 849 (N.D.Cal. 1978). These decisions are not inconsistent with ours.

2. Those orders remained unaltered until January 17, 1977, when Judge Will issued an order limiting disclosure of materials from the Siegel Trading Company to attorneys for the government and Koblenz, and specifically denying disclosure of those materials to any other employees of the CFTC.

Director of the CFTC Division of Enforcement, and to Donald Weiss, the Assistant Director who was Koblenz' immediate supervisor. When Koblenz returned to Washington on weekends, he discussed the Chicago Grand Jury investigations in conversation with Schief.

Paul Perlin was first contacted by investigators from the CFTC in 1975, and trading records of his commodities trading firm were subpoenaed by the grand jury in 1976. Perlin appeared personally before the grand jury on January 4, 1978, where he was questioned regarding trades he had executed at the Chicago Board of Trade. Having been informed that he was a subject of the grand jury investigation, Perlin declined to answer the questions. The government maintains that Perlin was a subject of investigation only with regard to trading in the silver pit, but the trades about which Assistant U.S. Attorney Senderowitz asked on January 4, or about which he intended to ask, included a soybean trade. Senderowitz, speaking before the grand jury, told Perlin that they had a witness who would testify to an illegal transaction on Perlin's behalf made at the soybean pit.

Perlin persisted in his refusal to testify and was granted immunity on June 14, 1978. At that time the government said that his status had changed, and "he has the status at this point of a witness rather than a subject or target of this investigation." Perlin again refused to testify, and the government moved that he be judged in contempt and committed. On June 20, Perlin moved to vacate the immunity order and to strike the petition for judgment and commitment. Perlin argued that the grand jury was tainted by the participation in it of personnel from the CFTC, principally the special attorney, Koblenz, and by the use of grand jury materials in CFTC administrative proceedings. Other commodity traders under investigation had motions before Judge Parsons based on similar arguments

and he ruled on them during a hearing on August 10. At that hearing, an affidavit of Nancy Beers, a former investigator for the CFTC, and a Rule 6(e) "disclosee" during the commodities investigation, was introduced alleging that the government's agents had indicated an awareness of exceeding the rule against disclosure of grand jury material, and had expressed a concern to develop a way of avoiding judicial examination on that issue. These new allegations prompted Judge Parsons to hold an evidentiary hearing on August 14–15 into possible abuse of the grand jury either as a tool to get evidence for the CFTC administrative proceedings, or by leakage of information into the administrative case in violation of Rule 6(e). At the end of the hearing Judge Parsons ruled that there was "no evidence that the receipt of [information] was used to in any manner assist in the civil litigation, nor in any manner was it used to infect or contaminate the grand jury." Perlin's motions were subsequently denied and he was judged in contempt and ordered committed on September 8, 1978. The commitment was stayed pending this appeal. We affirmed by order of October 4th, stating that this opinion would follow.

## I. *Conflict of Interests*

The evidentiary hearing held by Judge Parsons laid to rest any claim that there was actual misuse of the grand jury for civil administrative purposes, or that there was breach of grand jury secrecy sufficient to warrant its termination. The primary issue on appeal, therefore, is an alleged tainting of the grand jury by the appearance of impropriety rising from the conflict of interests in which Special Assistant U.S. Attorney Koblenz was placed. Having first, as attorney for the CFTC, himself recommended the grand jury investigation, he then, as Special Assistant U.S. Attorney, appeared before the grand jury to conduct the investigation he had recommended.[3]

---

**3.** The government argues that Perlin was subject to investigation regarding only his trading in silver, that the investigation recommended by Koblenz involved only soybeans, and that

therefore Koblenz did not recommend the investigation of which Perlin was subject. There is some evidence however that the government was interested in some of Perlin's trading in

Perlin argues for a *per se* rule that an appearance of impropriety sufficient to taint the grand jury and require its termination results when the agency attorney referring the criminal matter to the grand jury is appointed a special attorney to assist in the grand jury investigation.

■ There is said to be a conflict because the agency attorney's interest naturally lies in justifying the agency's recommendation that the case be referred for criminal prosecution. That bias allegedly conflicts with the alleged duty of the prosecutor to protect innocent citizens against unfounded criminal prosecution. In support of this view of the prosecutor's duty Perlin cites *United States v Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1973), but *Calandra* indicates that protection of citizens is the function, not of the prosecutor, but of the grand jury itself:

> The grand jury's historic functions survive to this day. Its responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions.

414 U.S. at 343, 94 S.Ct. at 617. *Branzburg v. Hayes*, 408 U.S. 665, 686–687, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962). Cf. *Duncan v. Louisiana*, 391 U.S. 145, 155–156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1967). Although grand juries should not be transformed by zealous prosecutors into symbols of oppression, *In Re Special February 1975 Grand Jury (Lopez)*, 565 F.2d 407, 411 (7th Cir. 1977), the function of the prosecutor is nonetheless to prosecute. Whether the employer of the attorney who recommends prosecution and then conducts the investigation before the grand jury is an agency, or as is more common, the Department of Justice or the Attorney General, his interest in justifying the prosecution remains the same. It is no more improper in one case than in the other for the prosecutor to have commenced the investigation and made up his mind as to the existence of grounds to indict. As a District Court recently observed in a case raising a similar conflict of interest challenge to the appearance of an SEC attorney before a grand jury as a special assistant to the U.S. Attorney: "to the extent that [the SEC attorney] did have an interest in seeing the [criminal] investigation produce a successful prosecution, it is unclear in what way he differs from any other zealous prosecutor." *United States v. Dondich*, 460 F.Supp. at 853 (N.D.Cal. 1978), 47 L.W. 2249.[4] The prosecutor may of course overstep the bounds of propriety, but that is occasion for a factual inquiry, not a *per se* rule.

Plaintiff would have us adopt the reasoning of *In Re April 1977 Grand Jury Subpoenas: General Motors Corp. v. United States*, 573 F.2d 936 (6th Cir. 1978), appeal dismissed *en banc* 584 F.2d 1366. There an IRS attorney who recommended criminal prosecution of the General Motors Corporation was appointed a Special U.S. Attorney to assist in conducting the grand jury proceedings. Two members of the Sixth Circuit panel found a conflict of interest or the appearance of a conflict sufficient to justify disqualification of the attorney.

In rehearing *en banc*, the Sixth Circuit held that the district court order dismissing General Motors' disqualification motion was non-appealable. The *en banc* majority therefore never reached the conflict of interest question. In a concurring opinion, however, Judges Edwards and Lively, re-

---

soybeans. Given our disposition of the conflict of interest question, we need not resolve this issue.

**4.** On the propriety of the prosecutors influencing the grand jury, see the ABA Standards Relating to the Prosecution Function, Commentary pt. 3, Std. 3.5 "Relations With Grand Jury" (Approved Draft, 1971): "In situations where the prosecutor must prosecute an indictment returned by a grand jury, it is especially important that he be free to express his opinion. A prosecutor who has conducted an adequate investigation and analyzed the evidence is in a position to furnish guidance to the grand jury on the law and the weight of the evidence and should be free to do so whether this leads to a determination to indict or not to indict."

peating the view expressed by Judge Merritt in his dissent from the panel opinion, said that:

> There is no inherent conflict of interest in the appointment of a federal attorney assigned to the Internal Revenue Service to assist in or conduct a criminal tax investigation through grand jury proceedings.

At 1371.[5] This view, which we believe to be correct, applies equally to the case before us.

Perlin argues that there is at least the appearance of a conflict, and points to the ABA Standards Relating to the Prosecution Function which provide that:

> A prosecutor should avoid the appearance or reality of a conflict of interest with respect to his official duties

(Approved Draft 1971, pt. 1, Std. 1.2(a)). By way of illustration, the ABA Standards continue:

> A conflict of interest may arise when for example,
>
> (i) a law partner or other lawyer professionally associated with the prosecutor or a relative appears as, or of, counsel for a defendant;
>
> (ii) a business partner or associate or a relative has any interest in a criminal case, either as a complaining witness, a party, or as counsel.

(Tentative Draft, pt. 1, Std. 1.2(b)).[6]

■ As the distinction drawn in these illustrations between law partners and business partners reveals, although the prosecutor should not be a professional associate of defense counsel, there is no conflict or appearance of conflict in his being professionally associated with other lawyers interested in the prosecution. The prosecutor of course is himself interested in the prosecution, but that is not the sort of interest that creates a conflict.

> [S]imultaneous involvement in investigative and prosecutorial aspects of federal enforcement proceedings does not appear to present the kind of conflict of interest addressed by the Code [of Professional Responsibility] or the Prosecution Standards.

*United States v. Dondich, supra,* at 856. The *Dondich* court considered that the *General Motors* panel decision was incorrectly decided, and we agree.

■ The Attorney General's power to appoint special assistant U.S. Attorneys to conduct "any kind of legal proceeding, . . . including grand jury proceedings" is granted by 28 U.S.C. § 515(a). Section 515(a), originally codified as 5 U.S.C. § 310, was enacted June 30, 1906, in response to *United States v. Rosenthal,* 121 F.2d 862 (S.D.N.Y. 1903), which held that only the U.S. Attorney or his assistant, but not a special assistant, could present a matter to the grand jury. The House Committee Report which accompanied the bill strongly suggests that the purposes of § 515(a) would be frustrated by a rule making it *per se* improper for the agency attorney who commenced and recommended prosecution to conduct the ensuing grand jury investigation:

> [The *Rosenthal*] decision makes the proposed legislation necessary if the Government is to have the benefit of the knowledge and learning of its Attorney General and his assistants, or of such special counsel as the Attorney General may deem

---

**5.** Judge Merritt had said, "In this case the lawyer has not accepted new employment that either creates a conflict of interest or creates the appearance of a conflict of interest. There is no conflict of interest between the Department of Justice and the Internal Revenue Service. If the lawyer had left General Motors to participate in the grand jury proceedings, General Motors would be entitled to have the lawyer disqualified on grounds of conflict of interest. In tax cases, however, the investigative arm of the government, the IRS and the litigative arm, the Department of Justice, must ex-

change information; and they may also exchange the people in the departments who have the information." 573 F.2d 936 at 947. We share his criticism of *United States v. Braniff Airways, Inc.,* 428 F.Supp. 579 (W.D.Tex.1977). See 573 F.2d at 947–948.

**6.** This paragraph was deleted in the Approved Draft, "because it carries the misleading implication that it is exhaustive. It may appropriately be regarded, instead, as commentary." Amendments to Approved Draft, 1971, pt. 1, Std. 1.2(b), Commentary.

necessary to employ to assist in the prosecution of a special case, either civil or criminal. As the law now stands, only the district attorney has any authority to appear before a grand jury no matter how important the case may be and no matter how necessary it may be to the interests of the Government to have the assistance of *one who is specially or particularly qualified by reasons of his peculiar knowledge and skill* to properly present to the grand jury the question being considered by it.

\* \* \* \* \* \*

If such a law is necessary to enable the Government to properly prosecute those who are violating its laws, *it is no argument against it that some grand jury may be, perhaps, unduly influenced by the demands or importunities that may be made upon it by such special counsel.* The same argument can as well be made against permitting a district attorney from attending a sitting of such jury.

There can be no doubt of the advisability of permitting the Attorney General to employ special counsel in special cases, and there can be no question that if he has been employed because of his special fitness for such a special case that the Government should have the full advantage of his learning and skill in every step necessary to be taken before the trial, including that of appearing before grand juries. (Emphasis added.)

H.R.Rep. No. 2901, 59th Cong., 1st Sess. (1906). See *In Re Subpoena of Persico*, 522 F.2d 41, 56–60 (2d Cir. 1975); *United States v. Wrigley*, 520 F.2d 362, 365–67 (8th Cir. 1975). Perlin argues that the bias of the agency attorney appearing before the grand jury

> may manifest itself in an unfair presentation of evidence, in that attorney's chilling effect upon grand jury witnesses, and in the attorney's persuasive influence over the grand jurors themselves, obtained over many months of contact.

(Respondent's brief, p. 31.) The House Report indicates, however, that although

"some grand jury may be, perhaps, unduly influenced by the demands or importunities that may be made upon it by such special counsel," a *per se* rule disqualifying agency counsel from conducting grand jury investigations they have recommended would be contrary to Congressional intent. Where prosecutorial misconduct results in a biased grand jury, a resulting indictment will be invalidated, but that requires a factual showing of bias. *United States v. Fuentes*, 432 F.2d 405 (5th Cir. 1970), *cert. denied*, 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 822. *Cf. Beck v. Washington*, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); *United States v. Polizzi*, 500 F.2d 856 (9th Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (similar showing required to reverse conviction). No lesser showing should be required at the pre-indictment stage, and there has been no such showing in this case.

We have no doubt, despite the broad language of 28 U.S.C. § 515(a) ("any attorney specially appointed by the Attorney General . . . may . . . conduct any kind of legal proceeding"), that there are limitations on that power unexpressed in the statute. The prior experience of a specially appointed Assistant U.S. Attorney might conceivably disqualify him from conducting a particular grand jury investigation. We hold only that an agency attorney who recommends prosecution is not *per se* disqualified from conducting the ensuing grand jury investigation as a Special Assistant U.S. Attorney.

▪ The intention of Congress to facilitate government employment of specially qualified individuals in grand jury proceedings, manifested in 1906 when it enacted § 515(a), was confirmed by the recent amendments to Rule 6(e) of the Federal Rules of Criminal Procedure. Rule 6(e), pertaining to grand jury secrecy, had provided that grand jury materials could be disclosed only to "attorneys for the government for use in the performance of their duties." In response to judicial decisions [7]

---

**7.** The judicial decisions referred to are *J. R. Simplot Co. v. United States Court for the*

*District of Idaho*, 39 AFTR 2d 77–372 (9th Cir. 1976); *Robert Hawthorne, Inc. v. Director of*

"highly restrictive of the use of government experts that require the government to 'show the necessity (to the Court) for each particular person's aid rather than showing merely a general necessity for assistance, expert or otherwise,' " S.Rep. No. 95–354, 95th Cong., 1st Sess. (1977), p. 7, reprinted in [1977] U.S.Code Cong. & Admin.News, pp. 527, 530, Congress specifically provided that "[d]isclosure . . . be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and (ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law." Fed.R.Crim.P. 6(e)(2) (1977).

There is no question that a Special Assistant U.S. Attorney is an "Attorney for the Government." Cases under Rule 6(e) holding that agency attorneys are not "attorneys for the government" are inapposite here, since they do not deal with agency attorneys appointed as special assistants and concerned Rule 6(e) before it was amended in 1977. See *In Re Grand Jury Proceedings*, 309 F.2d 440 (3d Cir. 1962); *In Re Grand Jury Investigation*, 414 F.Supp. 74 (S.D.N.Y.1976); *United States v. General Electric*, 209 F.Supp. 197 (E.D.Pa.1962). By its literal terms therefore, Rule 6(e) sanitizes the appearance of an agency attorney before the grand jury, once he is appointed a Special Assistant U.S. Attorney. We need not adopt such a literalistic argument, however, since the history of the amendments of Rule 6(e) so clearly indicates the continuing Congressional support for interagency cooperation and the active participation of agency personnel, including agency attorneys, in grand jury proceedings.

The purpose of the amendments to Rule 6(e) was to enable Federal agents to lend their assistance to government prosecutors:

Attorneys for the Government in the performance of their duties with a grand jury must possess the authority to utilize the services of other government employees. . . . There is no reason for a barrier of secrecy to exist between the facets of the criminal justice system upon which we all depend to enforce the criminal laws.

S.Rep. No. 95–354 at 6, U.S.Code Cong. & Admin.News 1977, p. 530.

In order to prevent leakage back to the civil investigatory agency of information disclosed pursuant to Rule 6(e), the Rule provides that the "disclosee" may use it only to assist "the attorney for the government in the performance of such attorney's duty to enforce Federal criminal law," and that the names of all "disclosees" are to be provided to the district court. Fed.R.

---

Internal Revenue, 406 F.Supp. 1098 (E.D.Pa. 1976); and *In Re April 1977 Grand Jury Subpoenas (General Motors Corporation)*, Misc. No. 77–144 (E.D.Mich. June 28, 1977), *Simplot* was subsequently withdrawn by order of the Ninth Circuit on June 28, 1977, presumably in response to the Senate Report accompanying the amendments to Rule 6(e), which specifically disapproved it. The *General Motors* case to which the Senate Report refers is the case from which the Sixth Circuit appeal discussed, *supra*, was taken. The District Court had granted General Motors' motion for a protective order with regard to the disclosure of grand jury evidence to IRS agents assisting the investigation, and it is to this that the Senate Report reacts. Since the court had denied General Motors' motion to disqualify the IRS agent who had been appointed special attorney, that issue, which is the issue before us now, was not specifically dealt with in the amendments, nor is it considered anywhere in the hearings or debates. *Proposed Amendments to the Federal Rules of Criminal Procedure: Hearings Before the Subcommittee on Criminal Justice of the Committee on the Judiciary, House of Representatives*, 95th Cong., 1st Sess. (1977); 123 Cong.Rec.H. 3222 (Daily ed. April 19, 1977); 123 Cong.Rec.H. 7866 (Daily ed. July 27, 1977). We note, however that Congressman Wiggins, referring to *Simplot* and *General Motors*, said that

"the fact that a civil investigation is ongoing should in no way impede initiating a grand jury investigation. Indeed, an IRS civil audit could well lead to evidence of criminal tax fraud. Both investigations must then go forward. However, jury information must not flow to the civil investigation, although the converse is not necessary or desirable."

123 Cong.Rec.H. 7868 (Daily ed. July 27, 1977).

Crim.P. 6(e)(2)(B). The Rule also provides that "A knowing violation of Rule 6 may be punished as a contempt of court." There are thus sufficient safeguards against the wrongful disclosure of grand jury materials to government officials to assist them in a civil prosecution. *In Re Special March 1975 Grand Jury (Ingram Corporation)*, 541 F.2d 166, 170 (7th Cir. 1976). A *per se* rule against the use of agency attorneys to conduct grand jury investigations would be an act of needless caution and would erect just such barriers between the facets of the criminal justice system as Congress intended to avoid. Cf. *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978).

## II. *Abuse of the Grand Jury*

 The question of conflict of interest aside, Perlin has raised several other challenges to the integrity of the grand jury, based on the participation and activity of Special Assistant U.S. Attorney Koblenz. He complains first that Koblenz is an improper person in the grand jury room, whose presence required the grand jury's dissolution, because he brought no special skills to the investigation, and is thus not a proper "disclosee" under Rule 6(e). To the extent that prior cases required a showing of "particularized need" for disclosure to agency personnel they have been superseded by the amendments to Rule 6(e). *United States v. Proctor & Gamble*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077; *J. R. Simplot Co. v. United States Court for the District of Idaho*, 39 AFTR 2d 77–372 (9th Cir. 1976); *Robert Hawthorne, Inc. v. Director of Internal Revenue*, 406 F.Supp. 1098 (E.D. Pa.1976); *In Re William H. Pflaumer & Sons, Inc.*, 53 F.R.D. 464 (E.D.Pa.1971). As the Senate Report makes clear, "The Rule as redrafted is designed to accommodate the belief . . . that Federal prosecutors should be able, without the time-consuming requirement of prior judicial interposition, to make such disclosures of grand jury information to other government personnel as *they* deem necessary to facilitate the performance of their duties relating to criminal law enforcement." S.Rep. No. 95–

354 at 8 (emphasis added), U.S.Code Cong. & Admin.News 1977, p. 531. The report accompanying 28 U.S.C. § 515(a) similarly refers to the need for legislation authorizing "such special counsel as the Attorney General may deem necessary to employ to assist in the prosecution of a special case." H.R.Rep. No. 2901, 59th Cong., 1st Sess. (1906). There is no requirement that the assistance offered by a Rule 6(e) "disclosee" or a special assistant U.S. attorney must be technical in nature. Koblenz may have only recently mastered the complexity of commodities trading, and a U.S. Attorney might presumably have similarly mastered them, but if the U.S. Attorney thought the presence of Koblenz would facilitate the government's presentation to the grand jury, it was within his discretion under 28 U.S.C. § 515(a) and Rule 6(e) to authorize his appointment and participation. Abuse of that discretion is of course subject to attack, but the hearing held by Judge Parsons reveals no evidence of such abuse here.

 Perlin further argues that the written and oral reports which Koblenz made to his superior, William Schief, the Director of the CFTC's Division of Enforcement, violated the letter and spirit of Rule 6(e). However, the original Rule 6(e) orders in this matter authorized disclosure to "investigators of the Commodities Futures Trading Commission," and Schief was from the start understood to be within the scope of that order. A number of personnel from the CFTC Division of Enforcement had been designated Rule 6(e) "disclosees" to assist the grand jury, and the reports to Schief enabled him to anticipate the staffing needs of his department. They also enabled him to contribute his insight and experience to the grand jury investigation. We believe these were appropriate reasons for disclosure. In these reports back to the Director of the Division of Enforcement, there was of course an increased risk of leakage into the ongoing civil investigations, but there is no indication that such leaks actually occurred.

Similar allegations of Rule 6(e) "disclosees" making reports to their department

chief were recently made in a case involving Internal Revenue Agents. *In Re Grand Jury Subpoenas, April 1978, at Baltimore,* 581 F.2d 1103 (4th Cir. 1978). As the court there said (at 1109 n. 14):

> So long as the district court is aware of this disclosure, we do not view it as a breach of Rule 6(e)(2)(B). It is the obligation of the Chief of the Intelligence Division to supervise the special agents assigned to that Division. That these agents have been assigned temporarily to assist in a grand jury investigation makes them no less responsible to their supervisor. Effective supervision is impossible if the supervisor is unaware of his agent's activities. Thus, we think the disclosure necessary to assist the Chief in the performance of his duties. As one to whom disclosure may be made, he, too, is under the non-disclosure obligation of Rule 6(e)(2)(B) and the possible penalty for contempt.

There being no suggestion here that the CFTC has used grand jury information disclosed to Schief for civil prosecution purposes, there is no breach of Rule 6(e).

### III. *The Public Interest and Due Process*

A United States Attorney may request an order compelling testimony if he determines that such testimony is necessary in the "public interest." 18 U.S.C. § 6003(b)(1). Perlin argues that the district court should have considered whether the grant of immunity to him was in the public interest, and whether the constitutional rights of the witness himself would be violated thereby.

█ The burden of determining the public interest is placed by § 6003 upon the Attorney General and his designees. The district court's function in this regard is largely ministerial. *United States v. Leyva,* 513 F.2d 774, 776 (5th Cir. 1975); *In Re Grand Jury Investigation,* 486 F.2d 1013, 1016 (3rd Cir. 1973). Interpreting substantially the same statutory language, the Supreme Court said in *Ullmann v. United States,* 350 U.S. 422, 432–33, 76 S.Ct. 497, 503, 100 L.Ed. 511 that a "fair reading . . does not indicate that the district judge has

any discretion to deny the order on the ground that the public interest does not warrant it." See *In Re Lochiatto,* 497 F.2d 803, 804 n. 2 (1st Cir. 1974); *In Re Kilgo,* 484 F.2d 1215, 1219 (4th Cir. 1973).

█ Half-conceding that the district court has no discretion to consider the public interest, Perlin goes on to argue that it does have discretion to consider whether the grant of immunity would violate due process. *Matter of Doe,* 410 F.Supp. 1163 (E.D. Mich.1976); *In Re Baldinger,* 356 F.Supp. 153 (C.D.Cal.1973). Perlin alleges that the grant of immunity violates his right to an untainted, independent grand jury, and his right against self-incrimination. Assuming for the purposes of argument that the district court does have such discretion, Perlin's argument still fails. We have already disposed of the allegation that the grand jury was tainted. As for his Fifth Amendment rights, Perlin argues that as he has been in the past a target of this grand jury and as the government's statements do not preclude his being a target of this same grand jury in the future, there is risk that testimony of his, compelled by a grant of immunity, might subsequently contribute to the same jury's decision to indict him. Were this to occur, however, the indictment would be subject to dismissal. *United States v. Hinton,* 543 F.2d 1002 (2nd Cir. 1976). In effect Perlin asks us to foreclose the possibility that the prosecutor might pursue an unconstitutional indictment by denying the immunity order. His complaint is premature. There will be sufficient opportunity to raise this issue if the immunity is in fact misused.

Finding as we do that there has been no violation of due process, no abuse of the grand jury, and no conflict of interest, the district court's order of contempt and commitment is hereby affirmed in conformity with our order of October 4th.