UNITED STATES of America, Plaintiff,

v.

**BESTWAY DISPOSAL CORPORATION,** Engar, Inc., Wowkowych Enterprise Disposal Services, Inc., Suburban Disposal Corporation and Ruoff, Inc., Defendants.

No. Cr. 86–210L.

United States District Court,
W.D. New York.

Feb. 12, 1988.

Charles V. Reilly, Dennis Steward, Sp. U.S. Attys. Antitrust Div., New York City, for plaintiff.

John Stuart Smith, Gordon L. Lang, Rochester, N.Y., for Bestway.

Edward Z. Menkin, P.C., Syracuse, N.Y., for Engar.

Lawrence J. Andolina, David Rothenberg, Rochester, N.Y., for Wowkowych.

Alfred P. Kremer, Rochester, N.Y., for Suburban.

Paul R. Braunsdorf, Rochester, N.Y., for Ruoff.

## MEMORANDUM DECISION AND ORDER

LARIMER, District Judge.

On December 9, 1986, the grand jury indicted defendants, corporations involved in commercial-industrial refuse removal services, for allegedly violating Section 1 of the Sherman Act, 15 U.S.C. § 1, by combining and conspiring in unreasonable restraint of interstate and foreign trade and commerce. The indictment charges, in part, that:

11. The aforesaid combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and co-conspirators, the substantial term of which was to allocate and divide customers for commercial-industrial refuse removal services in the Monroe County area among the defendants.

12. For the purpose of forming and effectuating the aforesaid combination and conspiracy, the defendants and co-conspirators did those things which they combined and conspired to do, including:

(a) discussing the customers in the Monroe County area each was going to serve; and

(b) providing non-competitive and rigged price quotations or refraining from providing price quotations to customers for commercial-industrial refuse removal services in the Monroe County area.

## DISCUSSION

### I. Discovery

■ *Bill of Particulars.* Since the grand jury returned this indictment in December of 1986, the Government has provided defendants with "mountains of documents." *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir.1987). Defendants have had an opportunity to review over ten thousand documents obtained by the Government during the investigation of this case. The Government has also provided defendants with copies of the transcripts of the grand jury testimony of all former and present officers and employees of the corporations. The Government filed a voluntary bill of particulars identifying the unindicted co-conspirators, indicating who withdrew from the alleged conspiracy and when, and further defining the term "allocate and divide customers".

Defendants filed a joint request for a bill of particulars seeking particularization of nearly every aspect of the Government's case—both evidentiary and theoretical. Specifically, defendants seek dates and places of meetings held in furtherance of the conspiracy, names of individuals through whom the corporate defendants entered the conspiracy, dates and locations of all overt acts and the identity of the conspirators performing such acts, description of all statements made by defendants in furtherance of the conspiracy, and specification of the Government's allegations with respect to allocation of territories and customers and the use of non-competitive price quotes. Basically, defendants request that the Government produce all evidence and proof that will be set forth at trial.

The purpose of a bill of particulars is to apprise a defendant of the nature of the charges against him, thereby allowing him to adequately prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. *See Wong Tai v. United States*, 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927); *Bortnovsky*, 820 F.2d 572, 574. An application for such a bill is addressed to the sound discretion of the trial court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir.1984).

Over the years, the courts that have confronted demands for bills of particulars in criminal antitrust cases generally have recognized that such cases are different from the "ordinary" criminal case. *United States v. Greater Syracuse Brd. of Realtors*, 438 F.Supp. 376, 380 (N.D.N.Y.1977); *see, e.g., United States v. J.M. Huber Corp.*, 179 F.Supp. 570 (S.D.N.Y.1959); *United States v. General Electric Co.*, 40 F.Supp. 627 (S.D.N.Y.1941). However, as Judge Munson observed in *Greater Syracuse*, "for the sake of attempting to glean some basic principles from those cases, the uniformity ends there." *Greater Syracuse*, 438 F.Supp. at 380. In line with this authority, this court believes that more expansive discovery should be allowed here. The court has carefully considered the individual facts of the case, the time-span of the conspiracy charged in the indictment, the Government's voluntary bill of particulars, and the Government's voluntary production of documents.

Based on the above, the Government is hereby ordered to respond in full to defendants' requests at paragraphs I(d), II(a), III(c), V(a). With respect to the defendants' requests at paragraphs VI(a), VI(b), and VII(a), the Government is ordered to specify whether it alleges that the defendants allocated or agreed to allocate specific customers to specific defendants, whether it alleges defendants refrained from soliciting specific customers or refrained from quoting prices to specific customers, and whether it alleges that the defendants quoted non-competitive or rigged prices to specific customers.

In light of the legal and factual complexity of this antitrust case, this information is necessary to enable the corporate defendants to investigate the allegations against

them and to adequately prepare their defenses. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987); *Greater Syracuse*, 438 F.Supp. at 379. Greater specificity is warranted in antitrust cases where the facts generally are not so much in issue as is how the law should be applied to the facts. (*Id.*, at 380).

*Rule 16 Discovery.* Defendants move under Rule 16(a)(1)(A) for production of the following statements: (i) all written or transcribed statements of a defendant or its representative; (ii) all written memoranda, notes, or reports purporting to memorialize or reflecting the substance of any oral statement made to a Government agent by a defendant or one of its representatives; (iii) all statements of unindicted co-conspirators; and, (iv) all written memoranda, notes, or reports purporting to memorialize or reflecting the substance of any oral statement made to a Government agent by a third-party in which the third-party recounts an oral statement made by a defendant or one of its representatives.

The Government has already provided each defendant with the grand jury testimony of its present and former employees and officers and the affidavits or written statements of its principals that accompanied any documents submitted to the grand jury. The Government states that this production constitutes all of the grand jury testimony of any witness who was an officer or employee of one of the defendants, including any prospective trial witnesses, and all unindicted co-conspirators who testified before the grand jury. The Government represents that it has no other sworn written or transcribed statements of any of defendants' representatives.

The Government agrees to provide and is hereby ordered to provide the substance of any oral statement made by an officer or employee of one of the defendants which statement was made to a known Government agent and which statement the Government intends to use at trial. The Government is also ordered to provide each defendant with a copy of the grand jury testimony of the present and former employees and officers of the other co-defend-

ants. To the extent that the Government has not complied with Rule 16(a)(1)(B) and (D), it is hereby ordered to do so.

In all other respects, defendants' motions under Rule 16(a)(1)(A) are denied. Defendants' reliance on *United States v. Gallo*, 654 F.Supp. 463 (E.D.N.Y.1987) is misplaced. The Second Circuit vacated this decision on May 29, 1987 in an unpublished order, and recently issued an explanatory opinion, *In re United States of America*, 834 F.2d 283 (2d Cir.1987). The Government has exceeded its obligation under Rule 16 and no further disclosure is appropriate.

*Brady Material.* All defendants move for the production of material under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under *Brady* and its progeny, the Government has an affirmative duty to provide a defendant with exculpatory evidence, as well as evidence with which the defense might impeach the Government's trial witnesses. *See United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Giglio*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Government acknowledges its continuing duty under *Brady* to produce such material.

 The Government indicated that all known *Brady* materials would be supplied to the defendants by July 31, 1987. To the extent the Government has not already furnished such material to the defendants, it is hereby ordered to provide all known *Brady* materials within twenty (20) days after entry of this decision. Any *Brady* materials that also constitute *Jencks* material need not be turned over until the appropriate time provided for in 18 U.S.C. § 3500. *See United States v. Campagnuolo*, 592 F.2d 852, 859–60 (5th Cir.1979); *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n. 1 (2d Cir.1974), *cert. denied*, 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975); *United States v. Santoro*, 647 F.Supp. 153, 186 (E.D.N.Y.1986); *United States v. Persico*, 621 F.Supp. 842, 870 n. 3 (S.D.N.Y.1985).

 Defendants' request for the production of materials related to the grand jury

proceedings is beyond the scope of *Brady* and is denied. With respect to defendants' other itemized requests, the Government has acknowledged its duty to disclose any such *Brady* information, and is bound by that duty.

*Disclosure of Grand Jury Proceedings.* Pursuant to both *Brady* and Rule 16, defendants seek disclosure of a variety of matters relating to the grand jury proceedings in this case. In no instance have defendants met their burden of showing that "a particularized need exists which outweighs the policy of grand jury secrecy." *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959). Unspecified allegations of impropriety or mere speculative assertions are insufficient to outweigh the policy of grand jury secrecy or to overcome the heavy burden on the moving defendant. *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). Accordingly, defendants' motions for such disclosure are denied.

## II. Motions to Dismiss

■ *Grand Jury Quorum.* Defendants' motion to dismiss the indictment on the ground that the grand jury lacked a quorum on May 19, 1986 and October 2, 1986 is denied. In response to this motion, the Government submitted to the court a copy of all the attendance sheets for all sessions of the grand jury that returned this indictment. It is clear from these records and page 4 of the transcript of Mr. Shadick's grand jury testimony on May 19, 1986, that there was a quorum of grand jurors present at all sessions of the grand jury that returned this indictment.

■ *Vagueness of Indictment.* Defendants' motion to dismiss the indictment on the ground that it is impermissibly vague is denied.

It is well settled that an indictment is sufficient "if, first, it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecution for the same offense."

*Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

The court has determined that the present indictment adequately alleges the essential elements of a violation of Section 1 of the Sherman Act and is sufficiently specific to satisfy the Sixth Amendment and Rule 7(c). The trade and commerce allegedly restrained are described in detail and the time, place, terms, and effects of the alleged violation are clearly set forth. *See United States v. Greater Syracuse Board of Realtors, Inc.,* 449 F.Supp. 887, 899 (N.D.N.Y.1978).

*Conflict of Interest.* Defendants also move to dismiss the indictment on the ground that the appearance of New York State Assistant Attorney General George Sampson before the grand jury created a conflict a interest that deprived defendants of their right to an impartial federal prosecutor, and that his appearance caused the improper disclosure of matters presented to the grand jury. Based on the following discussion, defendants' motion is denied.

George Sampson, an Assistant Attorney General in the New York State Department of Law Anti–Trust Bureau, was appointed as a Special Assistant to the United States Attorney General pursuant to 28 U.S.C. § 515(a) on August 8, 1984.

Section 515(a) provides in pertinent part that:

[t]he Attorney General ..., or an attorney specially appointed by the Attorney General under law, may, when specially directed by the Attorney General, conduct any kind of legal proceeding, ... including grand jury proceedings ..., which United States Attorneys are authorized by law to conduct ....

On August 8, 1984, George Sampson was assigned to the staff conducting the investigation of commercial-industrial refuse removal haulers in Monroe County pursuant to an appointment made by the Attorney General (Exhibit 1, affidavit of Gordon L. Lang). In an affidavit filed by Mr. Charles V. Reilly on June 25, 1987 (hereafter, "Reilly Affidavit"), who was and is the attorney

in charge of this federal anti-trust investigation, Reilly stated that Sampson did not participate in the decision to recommend the grand jury investigation (*id.*). All decisions regarding the direction of the investigation were made by Reilly with the approval of his superior and with consultation from his staff, including Sampson. Reilly directed Sampson to perform all work concerning this investigation on the premises of the Federal Anti–Trust Division Offices in New York City and not to remove any grand jury materials from those offices and to have all typing and clerical work performed on the premises of the Federal Building. Whenever Sampson appeared before the grand jury he was accompanied by a Department of Justice Attorney.

In an affidavit filed by Sampson on June 25, 1987 (hereafter, "Sampson Affidavit"), Sampson affirmed that he was closely supervised in his work as a Special Assistant by Reilly and two other attorneys with the Department of Justice Anti–Trust Division. He stated that he never testified before the grand jury or otherwise improperly attempted to influence the decision of the grand jury. Sampson stated that the final decision to recommend for an indictment was made by the attorneys for the Department of Justice. He further attested that Reilly fully instructed him concerning his obligations of secrecy under Fed.R.Crim.P. 6(e) and that at no time did he discuss or disclose any of the matters concerning the grand jury investigation to any one within the New York State Department of Law. Sampson's only reference to the grand jury investigation and his role in it was to inform his superior, Lloyd Constantine, when he would be out of the office, where he could be reached, and when he could be expected to return. Sampson affirmed that pursuant to Reilly's instructions, no grand jury documents, files, or notes were ever maintained in his State Attorney General's Office and that all work performed in connection with the federal grand jury investigation was performed on the premises of the Department of Justice in New York City or before the grand jury in Rochester.

In an affidavit filed by Lloyd Constantine, Chief of the New York State Department of Law, on June 25, 1987, Constantine stated that the only information he had regarding this investigation was that Sampson was appointed as a Special Assistant as part of the cross-designation program. He stated that a memorandum was prepared by his staff at his request instructing him on how to best insulate himself and his staff from inadvertently learning anything about the federal investigation.

With respect to an article that appeared in the *Democrat & Chronicle* in December of 1986, Constantine stated that his remarks in that article which appeared to evidence specific knowledge concerning the federal grand jury investigation were misquoted by the reporter. Constantine stated that when he spoke with a reporter he made it quite clear that his remarks concerned anti-trust investigations in general and the investigation by the State Attorney General's Office of the refuse removal industry on Long Island in particular. Constantine stated that upon learning that he had been misquoted, he made sure that a correction would be printed in the newspaper that made clear that he had no knowledge of the origin of the federal investigation or any other facts uncovered by it. This correction was printed in the *Democrat & Chronicle* on December 19, 1986 (see Exhibit 9 to Lang Affidavit).

Defendants' motion raises two issues, both of which are related to Sampson's so-called dual employment status with the State of New York and the United States Department of Justice.

First, as a factual issue, defendants claim that Sampson's appointment pursuant to § 515(a) and his appearance before the grand jury violated Fed.R. Crim.P. 6(d) and resulted in the improper disclosure of matters occurring before the grand jury in violation of Rule 6(e). There can be no serious dispute that Sampson, as a Special Assistant United States Attorney, was an "attorney for the Government" for purposes of Rule 6. *In re Perlin,* 589 F.2d 260, 267 (7th Cir.1978). As such, Sampson's appointment and appearance before

the grand jury did not violate Rule 6(d). Similarly, Sampson's presence at the grand jury proceedings and the disclosure to him of matters occurring before this grand jury did not violate Rule 6(e). Furthermore, there is no factual support for defendants' contention that Sampson inadvertently or otherwise disclosed matters occurring before the grand jury to any member of the New York State Department of Law.

■ Second, defendants challenge the authority of the Attorney General under 28 U.S.C. § 515(a) to appoint a state prosecutor as a special assistant. Defendants claim that the appointment of Sampson, a state prosecutor, as a special assistant in this case created a conflict of interest due to his dual employment status with the New York State Attorney General's Office and the Department of Justice which requires dismissal of this indictment.

■ This court has found no authority to support defendants' contention that the Attorney General exceeded the authority granted him under § 515(a) in appointing an Assistant State Attorney General as a Special Attorney for the Government in this case. To the contrary, the legislative history of § 515(a), which was originally codified as 5 U.S.C. § 310, and which was enacted in response to *United States v. Rosenthal,* 121 F. 862 (S.D.N.Y.1903), clearly evinces congressional intent to allow the Attorney General to utilize the peculiar knowledge and skills of any attorney in special cases.

> [The Rosenthal] decision makes the proposed legislation necessary if the Government is to have the benefit of the knowledge and learning of its Attorney General and his assistants, *or of such special counsel as the Attorney General may deem necessary to employ to assist in the prosecution of a special case, either civil or criminal.*
>
> \* \* \* \* \* \*
>
> There can be no doubt of the advisability of permitting the Attorney General to employ special counsel in special cases, and there can be no questions that if he has been employed because of his special fitness for such a special case that the

Government should have the full advantage of his learning and skill in every step necessary to be taken before the trial, including that of appearing before grand jurys. (Emphasis added).

*H.R.* Rep. No. 2901, 59th Cong., 1st Sess. (1906). *See In re Perlin,* 589 F.2d at 265–66.

In light of the language of the statute and its legislative history, there can be no doubt that the Attorney General has the authority to appoint a state prosecutor under § 515(a).

However, as the court in *In re Perlin* recognized, despite the broad language of § 515(a), "[T]here are limitations on that power unexpressed in the statute." *In re Perlin,* 589 F.2d at 266. For example, an attorney might be disqualified to conduct proceedings before the grand jury as a special attorney under § 515(a) based on ethical considerations, *see, e.g., In re Perlin,* 589 F.2d 260; *In re Grand Jury Subpoenaes,* 573 F.2d 936 (6th Cir.1978), *cert. denied,* 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1979); *United States v. Wencke,* 604 F.2d 607 (9th Cir.1979); *United States v. Braniff Airways, Inc.,* 428 F.Supp. 579 (W.D.Texas 1977); *United States v. Gold,* 470 F.Supp. 1336 (N.D.Ill. 1979).

In this case, defendants contend that Sampson's dual employment status created just such a conflict of interest. Specifically, defendants point to the State of New York's interest in a potential state civil treble damage action. Defendants contend that the State of New York's interests in such a future civil action were advanced with the return of the federal indictment and that when Sampson appeared before the grand jury, questioned witnesses, and generally participated in the investigation he did so with dual loyalties and obligations. In support of this contention, defendants rely upon *Young v. United States ex rel. Vuitton,* —— U.S. ——, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), *In re Grand Jury Subpoenaes,* 573 F.2d 936; *United States v. Gold,* 470 F.Supp. 1336, and *United States v. Braniff Airways, Inc.,* 428

**1034**

F.Supp. 579. These cases are clearly distinguishable and inapposite.

Except in most general terms, the Supreme Court decision in *Young* is not applicable to the instant case. The Court held that "Counsel for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order." 107 S.Ct. at 2128. In *Young,* as in the other lower court decisions cited by defendants, the conflict of interest that prompted the courts to take action was created as a result of *prior* involvement by one of the attorneys in related legal proceedings or investigations. The fact that the State of New York may have an interest in bringing a state civil anti-trust action against the defendants at some future date does not create, in this court's estimation, a conflict of interest or constitute such an appearance of impropriety as to warrant the most serious sanction of dismissal. *See, e.g., Wencke,* 604 F.2d at 611 ("There is no authority which would allow a defendant to disqualify a Government attorney by merely alleging potential civil litigation."); *In re Perlin,* 589 F.2d at 264; *Gold,* 470 F.Supp. at 1346 ("There is no *per se* rule that bars a Government attorney from serving before a grand jury merely because he is from the agency that originated the criminal charges."); *United States v. Dondich,* 460 F.Supp. 849, 853 (N.D.Cal.1978), *aff'd,* 646 F.2d 369 (9th Cir.), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981).

Based on a review of the record, it is the conclusion of this court that the appointment of George Sampson as a Special Attorney under 28 U.S.C. § 515(a) did not per se create a conflict of interest and there are no allegations that Sampson's conduct overstepped the bounds of propriety so as to require any further factual inquiry by this court.

Based on the foregoing, defendants' motions to dismiss the indictment based on the appointment of Sampson are denied.

## CONCLUSION

Based on the foregoing discussion, it is hereby ordered that consistent with this decision, defendants' motion for a bill of particulars is granted in part and denied in part; defendants' motion for Rule 16 discovery is granted in part and denied in part; defendants' motion for *Brady* material is granted in part and denied in part; defendants' motion for a disclosure of matters occurring before the grand jury is denied; defendants' motions to dismiss the indictment based on a lack of a grand jury quorum, the vagueness of the indictment, and conflict of interest are denied.

SO ORDERED.